FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 06, 2017

SEAN F. McAVOY, CLERK

1

2

3              UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF WASHINGTON

4

THOMAS TABBERT,                         No.   2:15-CV-0039-SMJ
5
                    Plaintiff,
6
          v.                            **ORDER DENYING
7                                       MICROPORT'S MOTION TO
HOWMEDICA OSTEONICS CORP.,              DISMISS**
8  d/b/a STRYKER HOWMEDICA
   OSTEONICS, a New Jersey
9  corporation,

10                  Defendant.

11        v.

12 MICROPORT ORTHOPEDICS INC.
   and ROCKY MOUNTAIN MEDICAL
13 DISTRIBUTORS, INC.,

14            Third Party Defendants.

15
        Before  the  Court,  without  oral  argument,  is  MicroPort  Orthopedics
16
Incorporated's  Motion  to  Dismiss  Howmedica  Osteonics  Corporation's  (d/b/a
17
Stryker Howmedica Osteonics) Third-Party Complaint, ECF No. 119. Through this
18
motion, third-party defendant MicroPort seeks to dismiss Howmedica's third-party
19
claims against MicroPort. Howmedica Osteonics Corporation resists the motion.
20

ORDER DENYING MICROPORT'S MOTION TO DISMISS **- 1**

1    Having reviewed the pleadings and the file in this matter, the Court is fully informed

2    and denies the motion.

### I.    RELEVANT BACKGROUND

4        This action is an employment dispute between Plaintiff Thomas Tabbert and

5    his former employer, Howmedica Osteonics Corporation, also known as Stryker

6    Howmedica Osteonics (Howmedica). *See generally* ECF No. 1. Howmedica is a

7    leading developer, manufacturer, and provider of orthopedic implants, instruments,

8    and other orthopedic products and services. ECF No. 90 at 16. Tabbert was

9    employed as a sales representative with Howmedica from about 1995 through June

10    10, 2014. *Id.*; ECF No. 1 at 4, 8.[1]

11        Tabbert alleges that Howmedica engaged in discriminatory and retaliatory

12    conduct against him while he was employed there. *Id.* at 1–3. Tabbert resigned

13    shortly after complaining about this alleged conduct. *Id.* at 3. Tabbert maintains that

14    he signed two employment agreements at Howmedica's insistence—one in 1995

15    (1995 Agreement) and the other in 2003 (2003 Agreement). *Id.* at 4–5. Howmedica

16    disputes the existence of the purported 2003 Agreement, argues that only the 1995

17    Agreement exists, and highlights non-compete provisions in the latter agreement.

18    ECF No. 90 at 3, 26. Tabbert contends that the alleged 2003 Agreement contains

19

20

---

[1] The parties seem to disagree on when Tabbert's employment at Howmedica began. Howmedica asserts that Tabbert applied for a job in 1995 but did not become an employee until January 1996. ECF No. 90 at 25. Regardless, Tabbert began his employment with Osteonics Corp., which merged with Howmedica in 1998. *Id.*

ORDER DENYING MICROPORT'S MOTION TO DISMISS - 2

1    non-compete provisions and promises to compensate him if he left Howmedica.

2    ECF No. 1 at 9. Both the signed 1995 Agreement and the purported 2003 Agreement

3    contain provisions indicating that New Jersey law governs the contracts. ECF No

4    1-4 at 8; ECF No. 90-1 at 45. Through the instant action, Tabbert seeks to enforce

5    the purported 2003 Agreement. *See generally Id*.

6        For its part, Howmedica filed an answer asserting affirmative defenses,

7    counterclaims, and third-party claims resisting Tabbert's allegations. *See generally*

8    ECF No. 90. Howmedica alleges tortious interference with contract against Rocky

9    Mountain Medical Distributors, Inc. (RMMD) and MicroPort Orthopedics, Inc.

10   (MicroPort), claiming that both were aware of and "intentionally induced" Tabbert

11   to breach his contractual obligations. *Id.* at 37–38. RMMD employed Tabbert

12   shortly after he resigned from Howmedica, and MicroPort distributes RMMD's

13   products. *Id.* at 15, 32–33. Specifically, Howmedica alleges that Tabbert diverted

14   business from RMMD and MicroPort in violation of his non-compete obligations.

15   *Id.* at 15–16.

16       Howmedica further asserts that Tabbert met with an attorney in July 2014

17   who advised Tabbert that selling MicroPort products would expose him to legal

18   liability. *Id.* at 33. And Howmedica maintains that RMMD and MicroPort knew of

19   Tabbert's purported non-compete obligations and his consultation with legal

20   counsel. *Id.* at 32–35.

## II.    DISCUSSION

MicroPort argues that Howmedica fails to state a claim against MicroPort upon which relief can be granted. ECF No. 119 at 1. Specifically, MicroPort asserts that the third-party complaint "offers nothing by way of specific factual allegations that would indicate any involvement on MicroPort's part in Mr. Tabbert's alleged breach of contract." *Id.* Additionally, MicroPort argues that discussions about the 1995 Agreement with legal counsel cannot give rise to the tortious interference with contracts claim because those discussions are protected by the litigation privilege doctrine. *Id.* at 12–14.

### A.    Standard of Review

A claim may be dismissed pursuant to Rule 12(b)(6) either for lack of a cognizable legal theory or failure to allege sufficient facts to support a cognizable legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To determine whether the complaint contains a statement showing that the pleader is plausibly entitled to relief, the court first identifies the elements of the plaintiff's claim and then determines whether those elements can be proven on the

alleged facts." *U.S. ex rel. Savage v. Washington Closure Hanford LLC*, No. CV10-5051-EFS, 2015 WL 5825966, *9 (E.D. Wash. Oct. 6, 2015) (citing *Iqbal*, 556 U.S. at 663). "Plausibility does not require a probability of success on the merits; instead it requires 'more than a sheer possibility' of success on the merits." *Id.* Courts accept a complaint's factual allegations as true and construe the pleadings in the light most favorable to the claimant when conducting this analysis. *Id.* (citations omitted). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, the plausibility standard does not "require that a complaint contain 'detailed factual allegations.'" *Sheppard v. David Evans and Ass'n*, 694 F.3d 1045, 1048–49 (9th Cir. 2012) (citing *Iqbal* 556 U.S. at 678).

Using this standard, the Court must decide whether Howmedica has sufficiently pleaded its tortious interference with contracts claim. Substantive state law governs this cause of action. As such, the Court must first determine which state's substantive law to apply.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

**B.    The Court need not decide whether New Jersey or Washington Law applies to resolve the present motion.**

    **i.    The elements of a tortious interference with contracts claim under New Jersey and Washington law do not conflict, making a choice-of-law analysis unnecessary.**

A federal court sitting in diversity applies the substantive law of the forum state in which the court is located, including that state's choice-of-law rules. *See Blangeres v. United States Seamless, Inc.*, No. 13-cv-260, 2015 U.S. Dist. LEXIS 165796, at *9 (E.D. Wash. Dec. 10, 2015) (citing *First Intercontinental Bank v. Ahn,* 798 F.3d 1149, 1153 (9th Cir. 2015)); *Carideo v. Dell, Inc.*, 706 F.Supp.2d 1122, 1126 (W.D. Wash. Feb. 12, 2010) (applying Washington law).

In Washington, a contract's choice-of-law provision is generally enforced. *McKee v. AT&T Corp.*, 191 P.3d 845, 851 (2008) (citations omitted). However, if parties dispute a contract's choice-of-law provision, an actual conflict between the laws or interests of Washington and those from the other state must exist before courts engage in a conflict-of-laws analysis. *Carideo*, 706 F.Supp.2d at 1126. Courts disregard a contract's choice-of-law provision and apply Washington law "if, without the provision, Washington law would apply; if the chosen state's law violates a fundamental public policy of Washington; and if Washington's interest in the determination of the issue materially outweighs the chosen state's interest." *McKee*, 191 P.3d at 851. All three conditions must be met. *Id.*

ORDER DENYING MICROPORT'S MOTION TO DISMISS - 6

Here, New Jersey or Washington law could potentially govern this dispute. Third-party plaintiff Howmedica asserts a tortious interference with contracts claim against MicroPort. The elements of this cause of action are substantially the same under both states' laws.[2] Thus, no conflict exists and a choice-of-law analysis is unnecessary.

The Court notes that both the 1995 Agreement and the purported 2003 Agreement designate New Jersey law as governing the agreements. ECF No 1-4 at 8; ECF No. 90-1 at 45. However, because both states' laws on this claim are substantially in accord, it is unnecessary to decide which state's law applies to resolve this motion.

ii. **The litigation privilege, as applied under New Jersey and Washington law, does not conflict, making a choice-of-law analysis unnecessary.**

MicroPort also argues that the litigation privilege precludes Howmedica's tortious interference with contracts claim. ECF No. 119 at 12–14. The litigation privilege protects parties, their attorneys, witnesses, and others from suit based on statements made in judicial proceedings. *See, e.g.*, *Bruce v. Byrne-Stevens &*

---

[2] The elements of a tortious interference with contracts claim in New Jersey require a plaintiff to demonstrate the following: "(1) an existing contractual relationship; (2) intentional interference with that relationship; (3) the malicious nature of the interference; and (4) damages resulting from the interference." *Matrix Essentials, Inc. v. Cosmetic Gallery, Inc.*, 870 F.Supp. 1237, 1247 (D.N.J. Dec. 12, 1994) (citing *Norwood Easthill Assocs. v. Norwood Easthill Watch*, 536 A.2d 1317, 1319 (N.J. Super. Ct. App. Div. Feb. 2, 1988), *aff'd* 85 F.3d 612 (3d Cir. 1996). In Washington, the elements are substantially the same: "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Leilang v. Pierce Cty. Med. Bureau, Inc.*, 930 P.2d 288, 300 (1997).

ORDER DENYING MICROPORT'S MOTION TO DISMISS - 7

*Assocs. Eng'rs, Inc.*, 776 P.2d 666, 667–68 (Wash. 1989); *Hawkins v. Harris*, 661 A.2d 284, 288 (N.J. 1995). Courts alternately refer to the litigation privilege as the witness immunity rule. *See, e.g.*, *Wynn v. Earin*, 181 P.3d 806, 814 (Wash. 2008) ("Our case law on the [witness immunity rule] is outlined in this opinion, but other jurisdictions have also recognized the enormous importance of the witness immunity rule, or litigation privilege as it is also called, to judicial proceedings."). These and other cases make clear that the litigation privilege "preserves the integrity of judicial proceedings by encouraging full and forthright testimony." *Id.*; *see also Hawkins* 661 A.2d at 288 (asserting that the litigation privilege is necessary to allow participants in judicial procedures to "speak and write freely without the restraint of fear of an ensuing defamation action").

Since state law governs the litigation privilege, determining whether New Jersey or Washington law applies to this issue is a threshold question. *See, e.g.*, *Hawkins*, 661 A.2d at 289 (discussing the litigation privilege as a state law matter). However, since New Jersey and Washington law are substantially in accord as to the litigation privilege, *see supra*, a choice-of-law analysis on this issue is also unnecessary. And, because it is unnecessary to decide the present motion, the Court declines to choose either New Jersey or Washington law for purposes of this motion.

**C.    Tortious Interference with Contracts Claim**

Since a choice-of-law analysis is unwarranted in this case, the Court next considers Howmedica's complaint's plausibility. Under New Jersey and Washington law, to succeed on a tortious interference with contracts claim, plaintiffs must demonstrate: (1) the existence of a contractual relationship; (2) intentional interference with the relationship; (3) that defendants interfered for an improper purpose or used improper means—what New Jersey refers to as the malicious nature of the interference; and (4) resultant damage. *Matrix Essentials, Inc.*, 870 F. Supp. at 1247; *Leilang*, 930 P.2d at 300. Washington also requires that defendants knew about the relationship. *Leilang* 930 P.2d at 300.[3]

MicroPort argues that Howmedica fails to allege facts establishing: "(1) MicroPort's intentional interference causing breach of the 1995 Agreement; (2) an improper purpose, use of improper means, or malice on MicroPort's part in connection with the alleged interference; or (3) resulting damages caused by MicroPort's alleged acts." ECF No. 119 at 7. Accordingly, the Court addresses these elements but not the remaining elements for this cause of action because they are uncontested.

---

[3] Defendant's knowledge is not at issue here, therefore, there is no conflict between New Jersey and Washington law.

### i. Howmedica has sufficiently pleaded that MicroPort intentionally interfered with the contractual relationship between Tabbert and Howmedica.

As discussed above, Howmedica must plead sufficient facts to make a plausible claim. MicroPort contends that Howmedica has failed to plead facts with sufficient detail to plausibly show that MicroPort interfered with the 1995 Agreement. ECF No. 119 at 7–10; ECF No. 133 at 2–5. MicroPort analogizes this case to *Bethea v. Roizman*, No. CIV. 11-254 JBS/JS, 2012 WL 250092, at \*32 (D.N.J. June 27, 2012). In *Bethea*, the court found that an allegation that just one meeting took place between the contractually-obliged party and the alleged interferer before the agreement's breach was too speculative to support an inference of interference. ECF No. 133 at 2–3 n. 2; *see also* ECF No. 119 at 9 (asserting that Howmedica's contention that MicroPort interfered with the 1995 Agreement is based on one meeting). MicroPort maintains that the pleading here suffers from the same flaw.

Here, paragraphs 66 through 74 and 90 through 96 of Howmedica's third-party complaint are particularly relevant. ECF No. 90 at 32–35, 37–39. In these paragraphs Howmedica alleges that Tabbert met with RMMD and MicroPort representatives and that they knew of his alleged contractual obligations to Howmedica. Specifically, Howmedica asserts that Tabbert forwarded to RMMD and MicroPort documents purporting to outline his legal obligations to Howmedica,

ORDER DENYING MICROPORT'S MOTION TO DISMISS - 10

including legal advice he received. *See, e.g.*, ECF No. 90 at 33. Nevertheless both MicroPort and RMMD put Tabbert to work in territory where he allegedly could not work. *Id.* Howmedica also claims that MicroPort's legal team helped Tabbert respond to a cease and desist letter he received in September 2014. *Id.* at 34.

MicroPort contends these factual allegations are insufficient to state a claim against it. The Court disagrees. Although Howmedica does not completely detail how MicroPort intentionally interfered with the 1995 Agreement, it is under no obligation to do so. The circumstances alleged here collectively make interference plausible: Tabbert's meeting with RMMD and MicroPort representatives; his relating his lawyer's opinion about his legal exposure to RMMD and MicroPort; and MicroPort's alleged purveyance of legal assistance to Tabbert. As alleged, MicroPort, though not directly employing Tabbert, knew of his supposed contractual obligations and allegedly provided legal assistance. This is enough to allege the first element.

   ii.   **Howmedica has sufficiently pleaded that MicroPort improperly interfered with the contractual relationship between Tabbert and Howmedica.**

To demonstrate improper interference under either New Jersey or Washington law, Howmedica must show more than the simple fact that MicroPort interfered with the 1995 Agreement. *Wapato Heritage, LLC v. Evans*, No. 07-CV-314-EFS, 2008 WL 2403653, *2 (E.D. Wash. June 11, 2008) (finding the improper

ORDER DENYING MICROPORT'S MOTION TO DISMISS - 11

purpose element met by inferring impropriety from facts relating to the alleged breach of contract); *Singer v. Beach Trading Co., Inc.*, 876 A.2d 885, 895 (N.J. Super. Ct. App. Div. July 19, 2005) (citations omitted) ("[M]alice is defined to mean that the interference was inflicted intentionally and without justification or excuse. Malice is determined on an individualized basis, and the standard used by the court must be flexible, viewing the defendants' actions in the context of the case presented."); *Pleas v. City of Seattle*, 774 P.2d 1158, 1163 (Wash. 1989) (citations and quotations omitted) ("[P]laintiff must show not only that the defendant intentionally interfered with his business relationship, but also that the defendant had a duty of non-interference; *i.e.,* that he interfered for an improper purpose . . . or . . . used improper means . . . .").

Here, Howmedica's third-party complaint sufficiently pleads malice or improper purpose or means. As in *Wapato Heritage,* the pleaded facts in the third-party complaint here suggest that MicroPort's alleged interference was intended to have Tabbert actively take away business from Howmedica even though it knew of Tabbert's existing contractual obligations. In short, the third-party complaint alleges that MicroPort knew that the actions it allegedly supported improperly encouraged Tabbert's breach of contractual obligations and undertook them anyway. Under either New Jersey or Washington law, this alleged improper interference suffices to plead the malice or improper purpose or means element.

### iii.    Howmedica has met its burden in pleading damages.

MicroPort points to case law holding that vague damages claims are insufficient and asserts that Howmedica's damages claims are similarly vague. ECF No. 133 at 7–8. While the total amount of money damages alleged in this case is not plead with certainty, the damages are not so vague and unsupported as to require dismissal. Paragraph 78 of the third-party complaint alleges that Howmedica lost not only substantial business but also "the value of its goodwill, customer relationships, trade secrets and confidential and proprietary information" as a result of Tabbert's, MicroPort's, and RMMD's actions. ECF No. 90 at 35–36. Collectively, Howmedica points to sufficient damages to support its claim.

### iv.    The litigation privilege is inapplicable here.

The Court is unpersuaded by MicroPort's assertion of the litigation privilege. As discussed above, the purpose of the litigation privilege is to encourage participants in judicial proceedings to speak freely without leaving themselves vulnerable to subsequent legal liability. *See, e.g.*, *Bruce*, 776 P.2d at 667–68; *Hawkins* 661 A.2d at 288. Although MicroPort correctly notes that the scope of the judicial proceedings in which the privilege applies is broad and includes pending or contemplated actions, ECF No. 119 at 13–14, to apply it in this case would be incongruous with the privilege's purpose. Here, Howmedica alleges that MicroPort actively assisted Tabbert in undermining his contractual obligations. These

ORDER DENYING MICROPORT'S MOTION TO DISMISS - 13

allegations are based, in part, on conversations Tabbert had with his attorney. To apply the litigation privilege here would effectively immunize third-parties assisting someone in circumventing their purported contractual obligations by simply talking to an attorney and receiving legal advice. This does not comport with the purpose of the litigation privilege. Therefore, the litigation privilege does not prevent Howmedica from asserting its claim against MicroPort.

### III.   CONCLUSION

As discussed above, Howmedica's third-party complaint sufficiently alleges facts that nudge its tortious interference with contracts claim from the possible to the plausible. Therefore, MicroPort's motion is denied.

Accordingly, **IT IS HEREBY ORDERED**:

**1.**   MicroPort's Motion to Dismiss, **ECF No. 119**, is **DENIED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 6th day of January 2017.

SALVADOR MENDOZA, JR.
United States District Judge

ORDER DENYING MICROPORT'S MOTION TO DISMISS - 14