FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 18, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THOMAS TABBERT, | No.   2:15-CV-00039-SMJ |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO STRIKE** |
| HOWMEDICA OSTEONICS CORP., | |
| Defendant. | |

Before the Court is Defendant Howmedica Osteonics Corp. (Howmedica) Motion to Strike, ECF No. 288.  In support of his motion for summary judgment, Plaintiff Thomas Tabbert submitted the declarations of five physicians—Drs. Bone, Staheli, Dawson, Gibbons and Hazel—with whom he had formerly worked as a sales representative at Howmedica. Howmedica moves to strike the depositions on two grounds: first it argues that Mr. Tabbert failed to disclose the declarations or properly identify the subject matter of the doctors' testimony in violation of Rule 26.  Howmedica argues this failure requires exclusion under Rule 37(c). Alternatively, Howmedica argues that the declarations contain inadmissible hearsay statements and should be excluded on those grounds. Mr. Tabbert acknowledges that he failed to provide the name of Dr. Hazel in his initial disclosures, but he

argues that any shortcomings in his disclosures do not warrant exclusion under Rule 37 because they were harmless to Howmedica.

The Court held a hearing on the motion on October 17, 2017. Upon consideration of the briefing and the arguments presented at the hearing, the Court denied Howmedica's motion to strike on both grounds. The Court also held that Mr. Tabbert must reimburse Howmedica for the cost of bringing the motion. This order memorializes and supplements the Court's oral ruling.

## BACKGROUND

In March 2016 Howmedica produced the initial expert damages report of Nicholas Knapton. Mr. Knapton identified six surgeons with whom Mr. Tabbert had formerly worked as a representative for Howmedica: Drs. Bone, Dawson, Merrell, Staheli, Gibbons, and Hazel. Mr. Knapton's report analyzed the sales to each of these surgeons for the years 2012 through 2016, with an emphasis on 2013 and 2014, the years immediately preceding and following Mr. Tabbert's resignation from Howmedica. Mr. Knapton's report found a thirty-three percent decline in sales to these six physicians in the year following Mr. Tabbert's departure. For the purposes of his report, Mr. Knapton assumed without deciding that Mr. Tabbert was the cause of the lost profits.

Pursuant to the Court's original scheduling order, ECF No. 23, Mr. Tabbert produced his initial disclosures in May of 2016. Under the initial scheduling order,

the discovery cutoff was set for June 30, 2016. However, after numerous extensions, the final discovery cutoff was set for June 13, 2017, ECF No. 153. Throughout the discovery period, all parties were subject to an ongoing obligation under Federal Rule of Civil Procedure 26 to supplement their initial disclosures as new information became relevant or available.

Mr. Tabbert's initial disclosures identified four surgeons likely to have discoverable information and described the subjects to which they could likely testify. The surgeons identified were Drs. Bone, Staheli, Gibbons, and Dawson. Mr. Tabbert indicated that Dr. Bone could testify to the fact that he stopped using Stryker products after Mr. Tabbert resigned. He also indicated that Drs. Staheli, Gibbons, and Dawson "can possibly testify regarding Mr. Tabbert's work performance." Mr. Tabbert did not identify Dr. Hazel in his initial disclosures.

After the close of discovery, Mr. Tabbert submitted five declarations from physicians with whom he had formerly worked as a Howmedica sales representative: Drs. Bone, Staheli, Gibbons, Dawson and Hazel. Dr. Dawson's declaration was dated June 16, 2017; Dr. Gibbons' and Dr. Staheli's declarations were both dated June 19, 2017; Dr. Hazel's declaration was dated August 21, 2017. Dr. Bone also submitted a declaration dated June 21, 2017. Dr. Bone's declaration included as an exhibit a letter that he had written in October of 2016. The declarations each refuted the notion that Mr. Tabbert solicited the doctors after

1   leaving Howmedica and denied that Mr. Tabbert was the cause of their reduced

2   sales with Howmedica in 2014.

3                              **LEGAL STANDARD**

4           Federal Rule of Civil Procedure 26 requires parties to disclose the name of

5   "each individual likely to have discoverable information—along with the subjects

6   of that information—that the disclosing party may use to support its claims or

7   defenses." Parties must also provide copies or descriptions of "all documents,

8   electronically stored information, and tangible things that the disclosing party has

9   in its possession, custody, or control and may use to support its claims or defenses."

10          Rule 26(e) imposes a continuous duty on all parties "to supplement at

11  appropriate intervals its disclosures under subdivision (a) if the party learns that in

12  some material respect the information disclosed is incomplete or incorrect and if

13  the additional or corrective information has not otherwise been made known to the

14  other parties during the discovery process or in writing."

15          Rule 37(a)(2) provides that if a party fails to make a Rule 26(a) disclosure,

16  any other party may compel disclosure or move for sanctions. A party who fails to

17  comply with Rule 26 will not be permitted to use as evidence at a trial, hearing, or

18  motion any witness or information not so disclosed unless the failure to disclose is

19  substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The Rule 37 sanction

20  is automatic. It does not require a finding of ill-will or bad faith on the part of the

1   non-disclosing party. Instead, it operates automatically unless the non-disclosing

2   party can show good cause why it should not. Where the matter falls somewhere

3   in between, the trial court may order payment of the reasonable expenses or

4   impose other appropriate sanctions. Fed. R. Civ. P. 37(c)(1)(A)–(C).

5                                              **DISCUSSION**

6          Howmedica seeks to exclude the five physician declarations submitted by

7   Mr. Tabbert on two grounds. First, it argues that Mr. Tabbert violated his Rule 26

8   disclosure obligations by failing to disclose the declarations and more particularly

9   describe the subjects to which the physicians could testify. Second, it argues that

10  the declarations contain inadmissible hearsay, making consideration of the

11  declarations improper on Mr. Tabbert's motion for summary judgement. While

12  the Rule 26 argument has some merit, exclusion under Rule 37(c) is not an

13  appropriate remedy in this case. Howmedica's hearsay objections lack merit.

14  Accordingly, the Court will not exclude the physician declarations on either

15  grounds.

16  **A.     Rule 26 Violations**

17         Howmedica argues that Mr. Tabbert violated Rule 26 in two ways. First,

18  Howmedica argues that Mr. Tabbert failed to disclose Dr. Hazel's name and failed

19  to identify with sufficient particularity the subjects to which Drs. Dawson, Gibbons,

20  Staheli, and Bone could testify. Second, Howmedica argues that Mr. Tabbert's

failure to disclose the declarations until after the close of discovery was a violation of his Rule 26 obligation to produce documents in his possession that he may use to support or defend against a claim.

Mr. Tabbert admits that he failed to disclose Dr. Hazel's name, but argues that any other shortcoming in his initial disclosure was both reasonable and harmless. He further asserts that his failure to disclose the declarations was reasonable because of the numerous extensions and confusion surrounding the discovery cutoff.

Howmedica is correct that Mr. Tabbert's conduct represents a technical violation of Rule 26, but exclusion is disproportionate to the severity of the harm. Accordingly, the Court will not exclude the declarations under Rule 37(c).

1.    **Mr. Tabbert violated Rule 26 by failing to properly disclose information relating to Drs. Staheli, Gibbons, Dawson, and Hazel.**

In his initial disclosures, Mr. Tabbert identified Drs. Bone, Staheli, Gibbons, and Dawson as persons with potential information. Mr. Tabbert indicated that Dr. Bone "can possibly testify to stopping use of Stryker Products on news of Mr. Tabbert's resignation from Stryker and Mr. Tabbert's work performance." ECF No. 298-8 at 10. Mr. Tabbert also indicated that Drs. Staheli, Gibbons and Dawson "can possibly testify about Mr. Tabbert's work performance." *Id.* at 9. Mr. Tabbert did

ORDER - 6

not identify Dr. Hazel in his disclosures. He did not supplement these disclosures at any point during the discovery period.

Mr. Tabbert's failure to identify Dr. Hazel violated Rule 26. Even if Mr. Tabbert did not initially identify Dr. Hazel as an individual with potentially relevant information, he had a duty to supplement his disclosures when Dr. Hazel's potential utility became apparent. Because Mr. Tabbert obtained declarations from five of the six physicians he served while employed at Howmedica, it seems unlikely that Dr. Hazel was an unforeseeable source of potential information for the entire duration of the discovery period.

On the other hand, Mr. Tabbert's disclosure with respect to Dr. Bone complied with Rule 26. Mr. Tabbert indicated that Dr. Bone could testify to the fact that he stopped using Stryker products after Mr. Tabbert resigned. This is sufficient to put Howmedica on notice that Dr. Bone possessed information regarding his decision to discontinue business with Stryker. It requires only a simple inference to conclude that this information would be relevant to establishing or defending against the causation element of Howmedica's breach of contract claim. If Howmedica had followed up on this information, it likely would have uncovered the same information contained in Dr. Bone's letter and declaration. The Court therefore will not suppress Dr. Bone's letter or declaration on these grounds.

ORDER - 7

The analysis is more difficult with respect to Drs. Staheli, Gibbons, and Dawson. Although Mr. Tabbert identified the doctors in his initial disclosures, he did not describe the subjects to which they could testify with particularity. Instead, he noted only that they could possibly testify to his "work performance." At the hearing, Mr. Tabbert's counsel asserted that the term "work performance" encompassed statements Mr. Tabbert may have made to the surgeons during or after his employment with Howmedica. Although the precise contours of Rule 26 disclosure obligations are not clearly defined,[1] the Court is unpersuaded by Mr. Tabbert's argument that Howmedica should have intuited the subjects of Mr. Tabbert's post-employment conduct and causation from the vague subject description he provided. Accordingly, Mr. Tabbert's descriptions with respect to Drs. Staheli, Dawson, and Gibbons were insufficient to satisfy his disclosure obligations under the rule.

In a 1997 decision, the District Court for the District of New Jersey interpreted the requirement to initially disclose names of individuals with discoverable information under Rule 26(a)(1)(A)(i). *Fitz, Inc. v. Ralph Wilson*

---

[1] Commentators have noted the challenges of applying Rule 26 given its lack of guidance on the scope and extent of initial disclosures. *See* Emily Gainor, *Initial Disclosures and Discovery Reform in the Wake of Plausible Pleading Standards*, 52 B.C.L. Rev. 1441, 1455 (2011) (citing Stephen N. Subrin, *Fudge Points and Thin Ice in Discovery Reform and the Case for Selective Substance-Specific Procedure*, 46 Fla. L. Rev. 27, 41 (1994)).

ORDER - 8

*Plastics Co.*, 174 F.R.D. 587, 589 (D.N.J. 1997). In that case, a plaintiff failed to disclose declarations of individuals that he later submitted in support of class certification. *Id.* at 588. The court held that the plaintiff's failure to disclose declarations in support of a motion for class certification violated the initial disclosure requirement. *Id.* at 591. The court reasoned that a "common sense" interpretation of Rule 26 requires that parties must disclose information clearly contemplated in the pleadings. *Id.* at 589. Because class certification was clearly contemplated in the complaint, the court held that the plaintiff violated Rule 26 by failing to include the declarations in its initial disclosures. *Id.* at 591.

Like the declarations at issue in *Fitz*, Mr. Tabbert's use of the doctors' declarations was clearly contemplated in the pleadings. Mr. Tabbert submitted the declarations to refute the breach and causation elements of Howmedica's breach of contract counter-claim. Mr. Tabbert's intent to refute these elements was clearly contemplated in his answer. The declarations Mr. Tabbert submitted fit within a litigation strategy formed as early as April of 2015, when Mr. Tabbert filed his answer to Howmedica's counterclaim. If it was not apparent then, this strategy should have at least emerged by October 20, 2016, when Dr. Bone submitted a letter disputing Howmedica's lost profits allegations. Accordingly, Mr. Tabbert should have identified the subject matter to which these doctors could testify with greater particularity and his failure to do so is a violation of Rule 26.

ORDER - 9

## 2.    Mr. Tabbert did not violate Rule 26 by failing to disclose the declarations in his possession before the discovery cutoff date.

At the hearing, Howmedica advanced a second basis for excluding the declarations Rule 26(a)(1)(B). Rule 26(a)(1)(B) requires counsel to provide to all other parties a description by category and location of "all documents, data compilations, and tangible things that are in the possession, custody or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment." Howmedica argues that the declarations were "documents" within Mr. Tabbert's possession before the close of discovery and that Mr. Tabbert's failure to disclose the declarations prior to the discovery cutoff date violated Rule 26. Although facially plausible, this argument is ultimately unpersuasive because, with the exception of Dr. Hazel, Mr. Tabbert identified the doctors in his initial disclosures.

A District Court in the Northern District of California addressed a similar argument in *Intel Corp. v. Via Tech., Inc.*, 204 F.R.D. 450 (2001). In that case, the court considered a motion to strike declarations that were not disclosed as part of initial disclosures on a motion for summary judgment. The court held that, if a party has disclosed the identity of a witness pursuant to Rule 26(a)(1)(A), the party is free to use a declaration obtained from that person without having previously disclosed it to the opposing party. *Id.* at 452. The court observed that, while in form, a declaration resembles a document, in substance, the declaration is more

appropriately characterized as testimony. *Id.* at 451. The court went on to reason that "when a fact witness is disclosed, all parties are on notice that the disclosing side contends the witness has relevant knowledge . . . [and] may well have interviewed the witness and may have even obtained a statement." *Id.* at 452. The court therefore held that consideration of the documents on a motion for summary judgment was proper.

The court's reasoning in *Intel Corp.* is persuasive. Accordingly, the Court finds the declarations were not documents requiring disclosure within the meaning of Rule 26. Moreover, as discussed below, even if the declarations do fall within the ambit of Rule 26, Mr. Tabbert has established that he was substantially justified in not disclosing them.

### 3. The circumstances of Mr. Tabbert's breach favor a remedy less than exclusion.

A party found to have violated its Rule 26 obligations is subject to sanctions under Rule 37. Rule 37(c) sanctions are not limited to initial disclosure violations, but may be based on a party's failure to amend its prior discovery responses. Rule 37 provides two exceptions under which its rule of exclusion does not apply: when the breach is substantially justified, or when it is harmless. Short of exclusion, the court may also impose lesser remedies including ordering the payment of costs associated with the motion to strike such as attorney's fees. Here, Mr. Tabbert's

Rule 26 breach is neither substantially justified nor totally harmless, but it does not warrant exclusion of the declarations.

                *a.*    *Substantial Justification*

"For purposes of Rule 37(c)(1), a party's failure to disclose is substantially justified where the non-moving party has a reasonable basis in law and fact and where there exists a genuine dispute concerning compliance." *Garcia v. Qwest Corp.*, No. CV-07-999-PHX-LOA, 2008 WL 4531657 (D. Ariz. Oct. 3, 2008) (citing *Nguyen v. IBP, Inc*, 162 F.R.D. 675, 680 (D. Kan. 1995)). Mr. Tabbert argues that his breach was justified because the term "work performance" could be interpreted to encompass Mr. Tabbert's conduct with respect to his compliance with his non-compete and his post-resignation contacts with the surgeons. As noted above, this interpretation is not convincing and contravenes a common sense interpretation of the subject description provided. Breach and causation were undeniably subjects of dispute regarding Howmedica's breach of contract counter-claim, and it is plain that the parties would seek to gather information supporting or refuting these elements. Mr. Tabbert should have described the subject matter with greater particularity.

However, Mr. Tabbert's failure to disclose the declarations as "documents" within the scope of Rule 26 is substantially justified. As noted above, it is unlikely that the declarations are, in fact, documents subject to disclosure. However, even if

ORDER - 12

they were, Mr. Tabbert's failure to disclose the documents would be justified as a reasonable interpretation of Rule 26 given the case law in this circuit on that point.

### b.    Harmlessness

The Fourth Circuit has advanced a test for determining whether sanctions should be imposed, which district courts in the Ninth Circuit have applied when considering whether a party's rule 26 violation was harmless. The test considers the following four factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence and (5) the non-producing party's explanation. *Southern States Rack & Fixture, Inc., v. Sherwin-Williams Co*., 318 F.3d 592 (4th Cir. 2003); *InfoSpan, Inc. v. Emirates*, NBD Bank PJSC, No. SACV 11-1062 JVS, 2016 WL 9150622 (C.D. Cal. June 8, 2016); *Dev. L.P. v. Pharmaceuticals, Inc*., 233 F.R.D. 567, 571 (C.D. Cal. 2005).

The second and fourth elements favor Howmedica's motion to strike the declarations. There is no ability to cure because the discovery cutoff has passed. Accordingly, Howmedica can no longer depose the doctors. Moreover, the evidence is important because it provides insight into the reason the doctors discontinued their business with Howmedica. This could be used to either support or refute the elements of causation and damages.

However, the first, third and fifth elements weigh in favor of a lesser remedy. Mr. Tabbert argues that Howmedica independently arrived at the conclusion that the five doctors were key damages witnesses as early as March 28, 2016—almost a year before the discovery cut-off date—when it submitted its affirmative damage expert witness report, ECF No. 191-2. In its report, Howmedica identifies Drs. Bone, Dawson, Merrell, Staheli, Gibbons, and Hazel as doctors for whom sales declined in the year following Mr. Tabbert's resignation. Having identified the five surgeons in its expert damages report, Howmedica cannot fairly be surprised by the fact that those surgeons may have information regarding why their sales with Howmedica declined. Further, admitting the declarations will not affect the present trial date.

Although Howmedica cannot fairly claim total surprise by the declarations, Mr. Tabbert's failure to supplement his initial disclosures should not go unchecked. Accordingly a sanction less than total exclusion is in order. While exclusion is the default remedy, Rule 37 permits the trial court to fashion other remedies to fit the severity of the breach including ordering the non-moving party to pay the reasonable expenses, including attorney's fees, caused by the non-moving party's failure to comply with the Rules. Given the circumstances and consequences of Mr. Tabbert's breach, the Court has determined that exclusion is not an appropriate

sanction. Instead, Mr. Tabbert is required to reimburse Howmedica for reasonable costs and fees associated with bringing this motion to strike.

**B.     Hearsay Objections**

Howmedica also argues that the doctors' declarations should be excluded as inadmissible hearsay. Howmedica objects primarily to statements where the physicians relay that Mr. Tabbert informed them that he was bound by a non-compete with Howmedica. In his motion for summary judgment, Mr. Tabbert relies on the declarations in support of his assertion that he neither breached his non-compete nor caused the physicians to discontinue or reduce their business with Howmedica. Howmedica also objects to the letter written by Dr. Bone attached as an exhibit to his declaration. Howmedica asserts that the letter itself is hearsay, and that certain statements within the letter regarding the conduct of a Howmedica sales representative are hearsay.

Howmedica's hearsay objection fails on all fronts. Hearsay is an out of court statement offered for the truth of the matter asserted. Not all out-of-court-statements are hearsay. Often, an out-of-court-statement is relevant for the effect it had on someone who heard it. Perhaps the most common illustration of the effect-on-the-listener use of out-of-court-statements is to show notice. Courts have long held that a statement can be offered to demonstrate that a person who heard it was placed on notice of a pertinent matter. *See, e.g.*, *Hiram v. United States*, 354 F.2d 4, 7 (9th

ORDER - 15

Cir. 1965). For example, the statement "'get out of the road' could be offered 'to show that [the plaintiff] had been put on notice that he was in imminent danger and should have been aware of the risk he faced.'" 30B Michael H. Graham, Federal Practice and Procedure § 6719 (Supp. 2017) (quoting *Echo Acceptance Corp. v. Household Retail Servs., Inc*., 267 F.3d 1068, 1090 (10th Cir. 2013)).

Each of the statements to which Howmedica objects fall within the realm of non-hearsay out-of-court-statements because they are offered not for the truth of the matter asserted, but for their effect on the listener. Accordingly, the declarations are properly considered in support of Mr. Tabbert's motion for summary judgment and Howmedica's motion to strike on hearsay grounds is denied.

### 1.    Dr. Dawson

Dr. Dawson's declaration contains two potential hearsay statements. First, Dr. Dawson states that he wrote the declaration after "being informed that Mr. Tabbert's former employer, Stryker, is suing him for hundreds of thousands of dollars." ECF No. 298-8 at 44. Although the statement references a statement made by Mr. Tabbert, it is not hearsay because it is offered to show the effect on the listener. Dr. Dawson cites Mr. Tabbert's statement not for its truth, but to explain his motivation for his writing the declaration.

Dr. Dawson also states that Mr. Tabbert "was up front about his departure from Stryker" and "mention[ed] that he was under a one year noncompete." *Id.*

Again, this statement is not being offered for the truth of the matter asserted—that Mr. Tabbert was bound by a non-compete—but rather to explain why Mr. Dawson conducted himself in a certain way (i.e. reducing his sales with Howmedica).

### 2.    Dr. Gibbons & Dr. Staheli

Dr. Gibbons and Dr. Staheli's statements are nearly identical and contain the following hearsay statement: "Mr. Tabbert told me that he was no longer employed with Stryker. Mr. Tabbert also told me that Stryker was claiming that he was under a non-compete and that I could not do business with Mr. Tabbert or his new employer for one year." ECF No. 191-2 at 42, 43. Mr. Tabbert does not seek to offer this statement for the truth—that Mr. Tabbert was bound by a non-compete. Instead, he offers it to show its effect on the listener—in this case, the absence of solicitation.

### 3.    Dr. Bone's Declaration

Federal Rule of Civil Procedure 56(e) permits the use of affidavits in support of or in opposition to a motion for summary judgment, but requires that the facts stated in them be admissible in evidence at trial. Accordingly, the Court may not consider hearsay statements in affidavits unless they fall within one of the hearsay exclusions or exceptions. *See* Fed. R. Evid. 802; *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 875 n.1 (9th Cir. 2002) . Likewise, any other form of proffered evidence must have some foundation for admissibility at trial.

Dr. Bone's declaration contains the following statement:

ORDER - 17

> I wrote this letter after being informed, by Mr. Tabbert, that Stryker was suing him for hundreds of thousands of dollars and claiming that the cessation of my business relationship with Stryker was somehow Mr. Tabbert's fault. As is more fully set out in the attached letter, nothing could be further from the truth.

ECF No. 191-2 at 38.

Although the statement above references a statement made by Mr. Tabbert, it is not hearsay. Hearsay is any out of court statement offered in evidence to prove the truth of the matter asserted. FRE 801(a), (c). A statement is not offered for the truth of the matter asserted when it is used to show its effect on the listener or to explain subsequent action. Here, Dr. Bone cites Mr. Tabbert's statement as the motivation for his writing the declaration and attached letter. Mr. Tabbert does not appear to offer the statement for the truth of the matter—that Howmedica is suing Mr. Tabbert—nor does he need to, because this fact is not in dispute. Accordingly, the alleged hearsay statement in Dr. Bone's declaration is not hearsay at all.

### 4.   Dr. Bone's 2016 Letter

Howmedica next argues that Dr. Bone's letter is hearsay that does not fall within any exception. Dr. Bone's letter was attached to his declaration as an exhibit. In his declaration, Dr. Bone referred to the letter and stated that he would testify to the facts contained in the letter at trial. ECF No. 191-2 at 38. Although Dr. Bone's letter may be hearsay, the Court can properly consider it on summary judgment because the facts and opinions contained therein could be admissible at trial.

Rule 56 permits a party to rely on affidavits or declarations so long as they are made on personal knowledge, set out facts that would be admissible in evidence and show that the declarant is competent to testify on the matters stated. The Ninth Circuit has recognized that this encompasses materials attached to affidavits or declarations on which the affidavit or declaration refers. *See, e.g.*, *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). In *Fraser*, the Ninth Circuit affirmed the trial court's consideration of the contents of the deponent's diary to which she referred during her deposition and which was attached to the deposition. Applying the same rule articulated in Rule 56, the court held that, so long as the *contents* of the diary were admissible at trial, the court could properly consider the diary. *Id.* at 1037. The court explained that this principle applied even if the diary itself would be inadmissible at trial.

The Court may consider Dr. Bone's 2016 letter because its contents would be admissible at trial. The letter contains recitations of events and opinions within Dr. Bone's personal knowledge. Depending on the circumstances, these could be admitted into evidence at trial in a number of ways: Dr. Bone could testify to all relevant portions from the letter from his personal knowledge. Fed. R. Evid. 602. If he forgets details of the event, the letter could be used to refresh his recollection. Fed. R. Evid. 612. If the letter failed to refresh his recollection, Dr. Bone may be able to read the letter into evidence as a recorded recollection under Fed. R. Evid.

803(5). Accordingly, the Court may properly consider the facts set forth in Dr. Bone's October 2016 letter.

Dr. Bone's letter also contains two instances that could be considered hearsay. When a statement contains hearsay within hearsay, each statement must qualify under some exemption or exception to the hearsay rule. Fed. R. Evid. 805; *United States v. Arteaga*, 117 F.3d 388, 396 n.12 (9th Cir. 1997).

First, Dr. Bone explains that he did not trust Mr. Tabbert's replacement, Mr. Brock Reichner, because he "heard several stories from reliable sources that made [him] question Brock's integrity." ECF no. 191-2 at 39. Dr. Bone then goes on to relate that he had heard stories about Mr. Reichner behaving aggressively and unprofessionally towards surgeons. Dr. Bone's statements relating rumors regarding Mr. Reichner are not hearsay because they are not offered for the truth of the matter asserted. Mr. Tabbert does not seek to prove that Mr. Reichner was aggressive or that the incidents relayed in the story took place. Instead, it is used only to show why Dr. Bone disliked Mr. Reichner and therefore discontinued his business with Howmedica. However, Dr. Bone's recitation of Mr. Tabbert's statements regarding his non-compete appear to be offered for the truth and should therefore be excluded.

Dr. Bone also states that "[w]hen Tom left Stryker Corporation, he was very upfront about being on a non-compete for one year and would not discuss or show

me any Microport products." *Id.* at 40. Like similar statements referenced in the other doctor declarations, Mr. Tabbert does not seek to offer this statement for the truth—that Mr. Tabbert was bound by a non-compete. Instead, he offers it to show its effect on the listener—in this case, the absence of solicitation.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

1.    Defendant's Motion to Strike, **ECF No. 288**, is **DENIED**.

2.    Plaintiff Thomas Tabbert must reimburse Howmedica for the reasonable costs and fees associated with brining its motion to strike on Rule 26 grounds.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 18th day of October 2017.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER **-** 21